O

# United States District Court
# Central District of California

| | |
|---|---|
| JENNIFER RED, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>GENERAL MILLS, INC.; GENERAL MILLS SALES, INC.,<br><br>        Defendants. | Case № 2:15-cv-02232-ODW(JPR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND TO STAY [22]** |

## I.   INTRODUCTION

Plaintiff Jennifer Red brings this putative class action lawsuit against Defendants General Mills, Inc. and General Mills Sales, Inc. for using partially hydrogenated oils (PHOs) in their food products.  Defendants move to dismiss the First Amended Complaint for failure to state a claim or, in the alternative, to stay the action under the primary jurisdiction doctrine.  For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss with leave to amend, and **STAYS** the action pending the Food and Drug Administration's determination of the food additive status of PHOs.  (ECF No. 22.)

/ / /

## II.   FACTUAL BACKGROUND

Defendants General Mills, Inc. and General Mills Sales, Inc. manufacture and distribute a variety of instant mashed potato products.  (First Am. Compl. ¶ 3.)  Some of these products contain partially hydrogenated oils (PHOs), which is "the main source of trans fat in the American diet."  (*Id.* ¶¶ 4, 10.)  Plaintiff alleges that PHOs cause immediate inflammation of internal organs upon consumption, and that such trans-fats increase the risk of coronary heart disease, type-2 diabetes, other cardiovascular diseases, and cancer.  (*Id.* ¶¶ 16, 18, 38, 41, 46, 77.)  Plaintiff also alleges that there is a "scientific consensus" that there is "no safe level" of artificial trans-fat consumption, and that trans-fats "provide no known benefit to human health."  (*Id.* ¶¶ 15–16.)  Moreover, there are "safe, low-cost, and commercially acceptable alternatives to artificial trans-fat, including those used in competing brands and even in a variety of instant mashed potatoes manufactured by [Defendants]."  (*Id.* ¶ 5.)

Plaintiff purchased and consumed Defendants' PHO-containing mashed potato products "more than 20 times over the past four years."  (*Id.* ¶ 61.)  The First Amended Complaint is silent as to whether the product label listed PHO as an ingredient, but Plaintiff contends that it is at any rate unreasonable to expect her to inspect the ingredients of the foods that she purchases.  (*Id.* ¶¶ 78–79.)  Plaintiff alleges both economic and physical injuries as a result of purchasing and consuming the mashed potato products.  (*Id.* ¶¶ 77; Opp'n at 3–12.)

On June 17, 2015, the FDA issued a declaratory order ruling that PHOs were no longer generally recognized as safe ("GRAS").  Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650-01, 34650 (June 17, 2015).  However, the FDA permitted food products containing PHOs to be sold until June 18, 2018, and encouraged food manufacturers to submit food additive petitions by that date so that the FDA could determine whether it is nevertheless "possible to establish, by regulation, safe conditions of use of PHOs."  *Id.* at 34657.

On March 25, 2015, Plaintiff filed this putative class action lawsuit against Defendants.  (ECF No. 1.)  On April 20, 2015, Plaintiff filed a First Amended Complaint, which asserts the following claims: (1) violation of the "unfair" prong and "unlawful" prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL); (2) public nuisance; and (3) breach of implied warranty of merchantability.  (ECF No. 19.)  On May 4, 2015, Defendants moved to dismiss the First Amended Complaint.  (ECF No. 22.)  Plaintiff timely opposed, and Defendants timely replied.  (ECF Nos. 26, 27.)  The parties also submitted supplemental briefing on the primary jurisdiction doctrine.  (ECF Nos. 29, 33, 34.)  On July 20, 2015, after hearing oral argument from the parties, the Court took the matter under submission. (ECF No. 36.)

## III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations,

unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the plaintiff. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.    DISCUSSION

Defendants raise numerous challenges to both Plaintiff's standing to bring these claims and the sufficiency of Plaintiff's allegations. While the Court rejects the challenge to Plaintiff's Article III standing, the Court nonetheless concludes that Plaintiff's claims should be dismissed. First, Plaintiff has not suffered an economic injury, and thus cannot bring claims under the UCL. Second, Plaintiff cannot state a claim for public nuisance because she has not suffered a "special injury." Third, Plaintiff cannot state a claim for breach of implied warranty of merchantability because the products were fit for their ordinary use. However, because there is a reasonable possibility that some of these deficiencies could be cured by amendment, the Court will give Plaintiff an opportunity to amend.[1]

Finally, the Court concludes that health effects of using PHOs as a food ingredient is a complex issue that should be initially determined by the FDA, and thus stays the matter under the primary jurisdiction doctrine.

### A.    Documents Outside the Complaint

Defendants request that the Court take judicial notice of the fact that Plaintiff has filed at least three other lawsuits alleging physical and economic harm associated

---

[1]    As the Court finds these issues dispositive, the Court declines to address the other arguments made by Defendants at this time. Defendants may reassert these arguments in response to Plaintiff's Second Amended Complaint after the stay is lifted.

4

with the purchase and consumption of food containing PHOs.  (Def.'s Req. for Judicial Notice (RJN) at 1–2, ECF No. 23.)  Defendants also request that the Court consider the label on the mashed potato products at issue under the incorporation by reference doctrine.  (*Id.* at 3–4.)  Plaintiff does not oppose Defendants' requests.  The Court concludes that it is appropriate to consider the other lawsuits filed by Plaintiff, but not the contents of the product label.

### 1.    Plaintiff's Other Lawsuits

"The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The court may take judicial notice of the existence of a complaint and the fact that certain allegations were made therein, but not of the truth of any facts asserted in the complaint.  *See Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1158 (C.D. Cal. 2011).

Here, the Court takes judicial notice of the following facts: (1) Plaintiff Jennifer Red was the named plaintiff in three other putative class action complaints filed between October 28, 2009, and February 11, 2010, in California (Def.'s RJN, Ex. 1–3); (2) in those lawsuits, Plaintiff made detailed allegations regarding the physical harm associated with the purchase and consumption of foods containing PHOs (*id.*); (3) Plaintiff asserted, among other things, false advertising claims relating to various misrepresentations on the product's ingredient label relating to the trans-fat content of the product and the health effects of consuming the product (*id.*); and (4) each complaint contains numerous pictures of the product's food and nutrition labels (*id.*). In fact, each complaint in the three prior lawsuits is substantially similar to the First Amended Complaint in this action, with the exception that Plaintiff does not pursue any false advertising claims against Defendants here.  (*See id.* Ex. 5.)

### 2.    Food Label

The food label, however, presents a different story.  Under the incorporation by reference doctrine, the court may consider evidence on which the complaint

"necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

Here, Plaintiff's claims do not "necessarily rely" on the contents of the labeling or even refer to the labeling—to the contrary, Plaintiff's theory is that she did not have time to read the label before purchasing the products. Moreover, the cases cited by Defendants that do consider a product's label all involve false advertising claims in which the content of the label was the primary issue. As a result, the Court cannot consider the product label under the incorporation by reference doctrine.

**B.    Article III Standing**

Defendants contend that Plaintiff's alleged physical injury from consuming PHOs is not sufficient to confer standing under Article III. (Mot. at 8–12.). The Court concludes that while the immediate physical injury of consuming PHOs is a "trifle" sufficient to confer standing, Plaintiff lacks standing to assert injuries arising from the alleged long-term health consequences of consuming PHOs.

The Constitution requires that a plaintiff suffer an "injury in fact" before he or she can bring a lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "An injury in fact is an invasion of a legally protected interest that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) (citations and internal quotation marks omitted). "The injury may be minimal." *Id.* Indeed, "an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 690 n.14 (1973) (internal quotation marks omitted).

**1.    Immediate Physical Injury**

Although the main thrust of Plaintiff's lawsuit is that PHOs potentially cause long-term physical harm, Plaintiff also alleges that she suffered immediate injury after

6

consuming PHOs because the consumption of PHOs "in any quantity causes inflammation and damage to vital organs." (First Am. Compl. ¶¶ 59, 77.)  A physical injury undeniably constitutes an injury-in-fact under Article III.  *Fisher v. Monster Beverage Corp.*, No. EDCV1202188VAPOPX, 2013 WL 10945131, at *8 (C.D. Cal. Nov. 12, 2013); *Catholic League for Religious & Civil Rights v. City & Cnty. of S.F.*, 624 F.3d 1043, 1066 (9th Cir. 2010); *Covington v. Jefferson Cnty.*, 358 F.3d 626, 638 (9th Cir. 2004) (suggesting that "watering eyes and burning noses" constitutes sufficient physical injury).  Defendants do not address whether this immediate physical harm is sufficient to confer standing.  Read in the light most favorable to Plaintiff, the Court must conclude that the alleged inflammation and organ damage, however slight, is sufficient to meet the low threshold for injury-in-fact under Article III.  *See Backus v. Gen. Mills, Inc.*, No. 15-CV-01964-TEH, 2015 WL 4932687, at *3–4 (N.D. Cal. Aug. 18, 2015).

### 2.    Potential Future Injury

The Supreme Court has held that a plaintiff can base standing on the risk of a future injury only if such injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  "In increased risk of injury cases involving products liability, courts generally require a plaintiff to allege '(i) a substantially increased risk of harm and (ii) a substantial probability of harm with that increase taken into account.'" *Backus*, 2015 WL 4932687, at *7 (citation omitted).

Like in *Backus*, Plaintiff here alleges that she consumed the PHO-containing products approximately 20 times over the past four years.  (First Am. Compl. ¶ 61.) The Court agrees with *Backus* that none of the allegations in the First Amended Complaint show that such little consumption is sufficient to *substantially* increase her risk of contracting cardiac disease, or that after such an increased risk, the probability of then contracting cardiac disease is substantial.  *Backus*, 2015 WL 4932687, at *7. Thus, Plaintiff does not have standing to assert claims based on such future harm.

/ / /

7

## C.     Unfair Competition Law

Defendants argue that Plaintiff has not suffered an economic injury because she received exactly what she thought she was purchasing—a potato mix containing PHOs—and thus lacks standing under the UCL.  (Mot. at 11–12.)  Plaintiff counters that she suffered an economic injury because "she paid for a safe product, but received a dangerous product" containing PHOs.  (Opp'n at 9.)  The Court does not find Plaintiff's reasoning persuasive.

Claims under the UCL must be "prosecuted exclusively . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  In other words, the alleged unfair business practice must give rise to an economic injury.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  Any economic injury that is sufficient to confer standing under Article III is also sufficient to confer standing under the UCL.  *Id.* at 323–24.  To show economic injury, the plaintiff must "surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have."  *Id.* at 323; *see also Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013) ("[A]n economic injury typically requires a loss of the plaintiff's benefit of the bargain, such as by overpayment, loss in value, or loss of usefulness." (citing *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010))).

However, "self-inflicted harm doesn't satisfy the basic requirements for standing.  Such harm does not amount to an 'injury' cognizable under Article III." *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006); *Mendia v. Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir. 2014) (no standing to challenge pre-trial detention where plaintiff chose to remain in custody after being offered release on his own recognizance); *Kukui Gardens Ass'n. v. Jackson*, No. CIV. 06-00534 SOM/LE, 2007 WL 128857, at *7 (D. Haw. Jan. 11, 2007); *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir.

1    1999) (declining to recognize self-inflicted injuries); *Clapper*, 133 S. Ct. at 1151.

2        In *National Family Planning*, the plaintiff sued to enjoin enforcement of a
3    statute because it was allegedly inconsistent with a regulation (enacted under a
4    different statute).  468 F.3d at 828.  The District of Columbia Circuit held that the
5    plaintiff lacked standing to bring the claim because it did not petition the
6    administrative agency to clarify the inconsistency before bringing suit.  *Id.* at 831.
7    The court noted that such a petition was "an easy means for alleviating the alleged
8    uncertainty" between the statute and the regulation, and that "the [plaintiff] has *chosen*
9    to remain in the lurch" by not doing so.  *Id.*  Thus, the uncertainty of which plaintiff
10   complained was a self-inflicted injury that was "[in]sufficient to confer standing."  *Id.*

11       Similarly here, the allegations made by Plaintiff in the three other trans-fat
12   lawsuits shows that Plaintiff knew that PHOs were unhealthy, knew that food products
13   sold in California contain PHOs, and knew that she could (or should be able to) look
14   at the ingredients on the label to determine whether or not that particular product
15   contained PHOs.  In light of this, Plaintiff cannot reasonably claim that she sought to
16   purchase PHO-free food unless she alleges that the label on the products at issue did
17   not list PHOs as an ingredient (thereby inducing her to unwittingly purchase products
18   with PHOs in them).  Plaintiff does not allege such facts.  Instead, Plaintiff alleges
19   that even if PHOs were listed as an ingredient on the label, it is unreasonable to expect
20   her to read the label before purchasing the food.  This is precisely the type of self-
21   inflicted injury that both the Ninth Circuit and the District of Columbia Circuit has
22   held does not confer standing, and is therefore insufficient under the UCL.[2]

23   _____

24   [2]    Similarly, numerous courts have declined to recognize claims stemming from a plaintiff's failure
     to read and heed product labels.  *Goehring v. Target*, 91 F. App'x 1, 5 (9th Cir. 2004) (affirming
25   summary judgment where "warnings [were] adequate and, had they been read and heeded, would
     have prevented the injury"); *Alfano v. BRP Inc.*, No. 2:08CV1704JAMDAD, 2010 WL 2292265, at
26   *2 (E.D. Cal. June 4, 2010) ("[U]ndisputed evidence that a plaintiff failed to read instructions or
     warnings which were provided with the product is sufficient to entitle the defendant to judgment as a
27   matter of law.");  *Salyards ex rel. Salyards v. Metso Minerals Tamper OY*, No. 1:04 CV 05798
     OWW LJ, 2005 WL 3021959, at *9 (E.D. Cal. Nov. 10, 2005) ("[W]here there is no intermediary at
28   all, the end user is held responsible for his or her failure to read warning labels.").

However, the Court will allow Plaintiff an opportunity to amend the claim. The First Amended Complaint cleverly avoids making any direct allegations about whether or not the label lists PHOs as an ingredient and whether or not Plaintiff looked at the ingredient label before purchase. Plaintiff would therefore not contradict any prior allegations if she filed a Second Amended Complaint alleging that she looked at the label, and that the label did not list PHOs as an ingredient.

**D.    Nuisance**

Defendants next contend that Plaintiff cannot maintain a public nuisance claim because Plaintiff has not suffered an injury that is unique and different from that suffered by the general public. (Mot. at 22–23.) Plaintiff responds that the injury to the public is Defendants' "interference with [their] right to a safe food supply," whereas Plaintiff's individual harm is emotional distress and loss of money. (Opp'n at 20.) Again, the distinction is not persuasive.

"A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493. "The damage suffered must be different in kind and not merely in degree from that suffered by other members of the public." *Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*, 24 Cal. App. 4th 1036, 1040 (1994). "This requirement of a different harm stems from the belief that, because a public nuisance action concerns a wrong against the community, it is 'ordinarily properly left to the appointed representative of the community.'" *Simpson*, 989 F. Supp. 2d at 1024 (citation omitted).

All of the injuries Plaintiff claims to have suffered here would also have been suffered by the public, and vice versa. Indeed, Plaintiff herself concedes that the issue "[w]hether Defendants' conduct is a nuisance" is a "[q]uestion[] of law and fact common to Plaintiff and the Class." (First Am. Compl. ¶ 82b.) If Plaintiff could pick and choose which injuries she has sustained and which injuries the public has sustained, the special injury requirement would be meaningless. As the *Simpson* court noted, "[PHOs] are not uniquely harmful to Plaintiff, but rather constitute a general

10

health hazard to anyone who consumes them.  All consumers who have purchased the [product] have 'lost money' by that act in the same manner that Plaintiff did."  989 F. Supp. 2d at 1025; *see also Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*, No. C 15-00567 WHA, 2015 WL 4309427, at *5–6 (N.D. Cal. July 15, 2015); *Backus*, 2015 WL 4932687, at *15.  The Court thus dismisses this claim without leave to amend.

**E.     Breach of Implied Warranty of Merchantability**

        Defendants contend that an implied warranty of merchantability never attached to the product because Plaintiff failed to adequately examine the product before purchasing it.  In the alternative, Defendants argue that they did not breach the warranty because even if PHOs are unhealthy, products containing PHOs do not "lack[] the most basic degree of fitness for ordinary use."  (Mot. at 23–25.)  The Court disagrees with the former, but agrees with the latter.

        **1.     Examination of the Product**

        "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Cal. Com. Code § 2314(1).  However, the warranty will not attach where "the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods."  *Id.* § 2316(3)(b).  "In order to bring the transaction within the scope of 'refused to examine' in paragraph (b), it is not sufficient that the goods are available for inspection.  There must in addition be a demand by the seller that the buyer examine the goods fully.  The seller by the demand puts the buyer on notice that he is assuming the risk of defects which the examination ought to reveal."  *Id.* § 2316(3)(b) cmt.  Here, Defendants do not show that they made a demand to Plaintiff to inspect the product before purchasing it, and thus the exception under subsection (3)(b) does not apply.

        **2.     Fitness for Ordinary Use**

        The warranty of merchantability "'provides for a minimum level of quality.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009).  "A breach of the warranty

of merchantability occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Id.* (citation omitted).  "In the context of food cases, a party can plead that a product violates the implied warranty of merchantability by alleging, for example, that the product was not safe for consumption, or that the product was 'contaminated or contained foreign objects.'" *Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908-BLF, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014) (citations omitted).  "Crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade." *Pisano v. Am. Leasing*, 146 Cal. App. 3d 194, 198 (1983); *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer").

The Court is not convinced that the warranty of merchantability covers the allegations in this lawsuit.  The warranty provides the consumer with only a *minimum* level of protection against product defects; it does not guarantee a perfect product. Here, the inclusion of ingredients in a food product that causes inflammation of organs does not render the product totally unfit for the basic purpose of consumption. *Backus*, 2015 WL 4932687, at *16.  Moreover, as Plaintiff herself acknowledges, the use of PHOs in packaged food products was common practice ten years ago, and is still in use in the trade today.  First Am. Compl. ¶ 13; *Pisano*, 146 Cal. App. 3d at 198.  While a substantially increased risk of contracting cardiac disease following long-term consumption of such products could potentially breach the warranty of merchantability, Plaintiff lacks standing to assert claims based on such an injury.  (*See supra* Section IV.B.2.)  Consequently, the Court dismisses this claim without leave to amend.

## F.    Primary Jurisdiction Doctrine

Defendants request that the Court dismiss or stay the case under the primary jurisdiction doctrine.  "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an

issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "A court's invocation of the doctrine does not indicate that it lacks jurisdiction. Rather, the doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.* (citation omitted).

Courts apply a multi-factor test in deciding whether the primary jurisdiction doctrine applies, including "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). "[W]here determination of a plaintiff's claim would require a court to decide an issue committed to the FDA's expertise without a clear indication of how [the] FDA would view the issue, courts of this district have repeatedly found that dismissal or stay under the primary jurisdiction doctrine is appropriate." *Hood v. Wholesoy & Co, Modesto Wholesoy Co. LLC*, No. 12-CV-5550-YGR, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013).

Here, all four factors support the application of the doctrine. Plaintiff's UCL claim raises the issue whether the presence of PHOs in mashed potato products creates a risk to human health that is not outweighed by its utility, and if so, what type and amount of PHOs can be used. Congress granted the FDA authority to comprehensively regulate food safety by requiring the pre-market approval of food additives and exempting foods that are generally recognized as safe. *See Backus*, 2015 WL 4932687, at *17; 21 U.S.C. §§ 342, 348; 21 C.F.R. § 170.20–170.38; 21 C.F.R. § 10.25(b) (the FDA "has primary jurisdiction to make the initial determination on issues within its statutory mandate"). Although the FDA recently determined that

PHOs are no longer GRAS, it specifically withheld judgment on whether there are certain uses of PHOs that could still be approved, and indicated that it would make such a decision in the next three years. 80 Fed. Reg. at 34650–51. Whether PHOs are unsafe in the amounts present in Defendants' products remains an issue of first impression as neither the courts nor the FDA have adjudicated the matter. If the FDA finds that certain amounts of PHOs are permissible as a food additive, this could significantly undermine Plaintiff's UCL claims. Likewise, if the FDA finds that no amount of PHOs is permissible, this could significantly bolster Plaintiff's claims.

Moreover, determinations regarding food ingredient safety require both specialized expertise and uniformity in administration. Whether and in what amount a particular chemical substance poses a serious public health risk is precisely the kind of complex question that requires a uniform answer by a specialized agency tasked with making such determinations. This decision should not be made on a piecemeal basis by courts or juries, which could result in conflicting determinations. "Both the food industry and consumers will benefit from the uniformity that comes with an agency determination." *Backus*, 2015 WL 4932687, at *18.

Plaintiff's arguments to the contrary are unconvincing. Plaintiff argues that this case does not raise an issue of first impression and thus the primary jurisdiction doctrine does not apply. (Pltf.'s Supp. Br. at 2–3.) However, the issues decided in the cases Plaintiff cites only involve false advertising claims and the FDA's regulation of food product labeling. *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010); *Henderson v. J.M. Smucker Co.*, No. CV-10-4524-GHK-VBK, 2011 WL 1050637, at *3 (C.D. Cal. Mar. 17, 2011). There are no false advertising claims in this case, and issues surrounding the safe consumption PHOs are distinct from advertising and disclosure obligations for foods containing PHOs.

Next, the fact that the FDA has already determined that PHOs are no longer GRAS does not mean the FDA has fully resolved the issue of the health effects of

PHOs.  The FDA did not determine that PHOs were *unsafe*, only that there was no longer a general consensus that PHOs were safe.  80 Fed. Reg. 34650-01, 34653 ("FDA need not demonstrate that PHOs are unsafe to determine that they are not GRAS, only that there is a lack of consensus among qualified experts regarding their safety.").  Indeed, the FDA is currently reviewing applications for exemptions for precisely this reason.  *Id.* ("We encourage submission of scientific evidence as part of food additive petitions under section 409 of the FD&C Act for one or more specific uses of PHOs for which industry or other interested individuals believe that safe conditions of use may be prescribed.").  The Grocery Manufacturers' Association has already announced its intention to submit a petition (Decl. Sipos, Ex. 3, ECF No. 34-1), and the FDA's evaluation of this and other such petitions will substantially inform the debate as to whether PHOs of any type or amount are necessarily unhealthy.

Finally, the fact that the FDA's determination could not have any preclusive effect on Plaintiff's claims under state consumer protection laws does not compel a different result.  The doctrine still applies to such state law claims.  *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) (affirming application of the primary jurisdiction doctrine where plaintiff brought claims under the UCL, the False Advertising Law, and the Consumer Legal Remedies Act); *Saubers v. Kashi Co.*, 39 F. Supp. 3d 1108, 1110 (S.D. Cal. 2014) (same); *Gordon v. Church & Dwight Co.*, No. C 09-5585 PJH, 2010 WL 1341184, at *2 (N.D. Cal. Apr. 2, 2010) (same).

However, the Court finds dismissal under the doctrine inappropriate due to the potential prejudice Plaintiff would suffer as a result of the passing of the statute of limitations.  *Astiana*, 783 F.3d at 762.  The Court therefore elects to stay the case rather than dismiss it.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss with **LEAVE TO AMEND**.  (ECF No. 29.)  Furthermore, the Court hereby **STAYS** this action pending the FDA's determination of the food additive status of

PHOs.   Defendants' counsel shall notify the Court once the FDA has made its determination, after which Plaintiff may amend her Complaint consistent with this Order and proceed with the remainder of the litigation.  Alternatively, if Plaintiff does not wish to amend her Complaint, the parties may submit a proposed judgment to the Court.

**IT IS SO ORDERED.**

December 29, 2015

        **OTIS D. WRIGHT, II**
      **UNITED STATES DISTRICT JUDGE**